**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 12-cv-03006-RM

JEREMY PINSON,

      Applicant,

v.

CHARLES DANIELS, Warden,

      Respondent.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

The matter before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 1.  On March 11, 2013, the Court entered an order that directed Respondent to show cause why the Application should not be granted.  Respondent filed an Answer, ECF No. 22, and Applicant filed a Reply, ECF No. 27.

The Court must construe the papers filed by Applicant liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should act as an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.  After reviewing the pertinent portions of the record in this case, including the Application, Answer, and Reply, the Court concludes that the action should be dismissed.

## I.  BACKGROUND

Applicant is a prisoner in the custody of the Federal Bureau of Prisons ("BOP"). He currently is incarcerated at the United States Penitentiary in Florence, Colorado.  Applicant is

challenging the validity of a prison disciplinary conviction in Incident Report No. 2076801 that resulted in a loss of good time credits and other sanctions.

The offense that precipitated the disciplinary charges in question occurred on October 10, 2010, while Applicant was incarcerated at FCI Talladega.  Applicant initially was charged with the disciplinary charges of (1) Threatening (Code 203); (2) Tampering with a Lock Device (Code 208); and (3) Assault Without Serious Injury (Code224).  Answer, ECF No. 22-1, George Declaration at 3 and Attach. 3 at 24.  The disciplinary hearing was held on December 22, 2010, and Applicant was found to have committed the acts.  *Id.*  Applicant appealed the results and the incident report was returned to the DHO (Disciplinary Hearing Officer) for reconsideration based on a procedural error.  *Id.*, Declaration at 3.  On December 15, 2011, a second disciplinary hearing was held, Applicant was found guilty of all offenses and was sanctioned with the disallowance of eighty-one days of good conduct time, among other sanctions.

At the second disciplinary hearing, DHO Jeffrey George found as follows:

> Your due process rights were reviewed by the DHO.  You received a copy of the incident report and submitted a written witness list for your staff representative and a written statement.  The Notice form indicates you wanted a Warden appointed staff representative who appeared at the hearing and that you would provide a list of inmate witness to your staff representative.  You had received a copy of the incident report and understood your rights.  These witnesses gave statements to your staff representative as they were incarcerated at USP Florence at the time of the hearing.  Staff witness testimony was obtained as requested. Incident report was reheard per Administrative Remedy 633622-R.  Incident occurred at FCI Talladega.
>
> On 10-4-10 at 8:00 pm you had your arm through your food slot and told the reporting staff member to come put your arm back in the slot.  The lieutenant approached your cell and you proceeded to throw an unknown substance which hit the lieutenant in the left side of his face, eye, and upper torso.  The lieutenant tried to close your food slot but discovered you had put toilet paper in the bolt recess which had to be removed before the slot could be closed.  You then stated,

"Why don't you come in here so I can stab your bitch ass.  I know you think I am crazy you mother fucker haw, haw, haw."

Your written statement was reviewed.  You deny the charges for this incident saying they are false and fabricated in retaliation for you repeatedly reporting the staff member for misconduct.  You discuss an incident in 2009 and another in 2010 in which you make allegations of staff misconduct.  You allege the reporting staff member assaulted you at 8:00 pm on the date of the incident and did not document it.  The next shift executive staff were contacted who ordered a Physician's Assistant to drive from home to examine you.  X-RAYS were ordered, Tylenol was prescribed , and you needed a sling.  Incident referred to FBI and you formally reported the incident.  Then next day the staff member learned he was under investigation so he justified his actions by writing this fabricated incident report and he harassed you the entire shift.  He took 20 hours to write his report and did not follow policy by reporting a use of force.  The investigating lieutenant viewed the video tape.  The video did not show me throwing anything or blocking a food slot.  He made opinions about the reporting staff member's movements.  Four eyewitnesses refuted the lieutenant's version of the Incident.  Video, witnesses, and documentary evidence attacks credibility of the reporting officer.  Response: Staff are aware of your misconduct allegations.  Staff ordinarily write incident reports within 24 hours of the incident or becoming aware an incident occurred.  The investigating lieutenant did review video.  He documents the review revealed the following: The reporting staff member approached your cell and appeared to confiscate a "fishing line" you were attempting to pull through the slot.  The reporting staff member moved quickly as if we were trying to avoid being struck and kicked the food slot in an attempt to regain control of the slot.  The staff member did draw a baton but did not swing or strike with it.  You asked for four witnesses during the investigation: inmate Hill/Lieutenant McKnight call Pinson a faggot and struck Pinson twice with a baton.  McKnight kicked the food slot with his "Big ass boot."  Inmate Mouzon/McKnight called Pinson a motherfucker and started chopping with the night stick.  Inmate Boyd/What you have down is what happened as in what the other inmates have told.  Inmate Piphus/Pinson threw nothing and McKnight began to kick and hit Pinson with the baton.  Investigating lieutenant noted Piphus' cell is out of view of Pinson's cell.

The first processing of the report was delayed due to the need to review information.  A Warden's memorandum was obtained to approve the delay.

After careful review the DHO believed section 11 of the incident report supported the codes as charged.  The report documents you did the staff member with a liquid substance, toilet paper was placed in an area which prevented the food slot from being closed quickly, and you threatened to stab the staff member.  Your allegations of staff misconduct were referred to the appropriate department for

3

review and appropriate action. The investigating lieutenant's review of the video shows you were involved in what was believed to be misconduct (the staff member moved quickly as if trying to avoid being struck and then kicked your food slot). The DHO considered your defense to the charge and your witness statements which mostly allege staff misconduct; however, greater credibility was given to the reporting staff member as to providing the most accurate version of the incident. You could be denying the incident in order to try to escape disciplinary sanctions and your witnesses could have provided statements in order to back up a fellow inmate. Thus, you were found guilty based on the greater weight of the evidence.

*Id.* at 12.

Applicant raises twelve claims as follows:

1) Reporting officer fabricated the report in retaliation for Applicant telling the captain and warden that the officer assaulted him;

2) Prison staff failed to determine whether Applicant was mentally competent or legally culpable to commit the offense as they are required to do pursuant to 28 C.F.R. § 541.6 ;

3) Disciplinary Hearing Officer (DHO) refused to allow more than two witnesses at hearing in violation of 28 C.F.R. § 541.8(f)(2);

4) DHO failed to document a reason for not calling all requested witnesses;

5) Investigating lieutenant refused to interview inmate Piphus even though inmate did have view of Applicant's cell at the time of the incident;

6) Staff representative refused to obtain records from internal affairs regarding investigation of incident which corroborated Applicant's retaliation claim and challenged the credibility of reporting officer;

7) DHO refused to view video of the incident;

8) DHO discounted the testimony of five eyewitnesses as not credible solely because they are inmates;

9) The video did not show Applicant striking the officer with any object;

10) DHO reimposed sanctions causing Applicant to serve the sanctions a second time;

11) DHO waited six months to write his report; and

12) All excluded witnesses would have testified Applicant did not assault or threaten anyone.

## II.  DISCUSSION

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997).  Habeas corpus relief is warranted only if Applicant "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

"[I]t is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment."  *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (internal quotation marks omitted); *see also Howard v. United States Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (citing *Mitchell* in the context of a federal prisoner challenging a prison disciplinary conviction).  However, "[p]rison disciplinary proceedings are not part of a criminal prosecution,

and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v.*

*McDonnell*, 418 U.S. 539, 556 (1974).

> Where a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing

*Wolff*, 418 U.S. at 563-67).  In addition, "revocation of good time does not comport with the

minimum requirements of procedural due process, unless the findings of the prison disciplinary

board are supported by some evidence in the record."  *Id.*, at 565 (internal citation and quotation

marks omitted).  Review under the some evidence standard "does not require examination of the

entire record, independent assessment of the credibility of witnesses, or weighing of the

evidence."  *Howard*, 487 F.3d at 812 (quoting *Hill*, 472 U.S. at 455).  "A disciplinary board's

decision can be upheld . . . even if the evidence supporting the decision is meager."  *Id.* (internal

quotations marks omitted).

Several of the claims address similar issues.  The Court will combine the similar issues

and discuss the merits of the claims as follows.

1.  Fabrication/Retaliation

Applicant contends that the reporting officer falsified the incident report in retaliation for

Applicant complaining to the warden and captain that the reporting officer attacked him.

Application, ECF No. 1, at 6.  Respondent argues that Applicant's fabrication allegation is not

supported by the record.  Answer, ECF No. 22, at 6.  In his Reply, Applicant asserts that

Respondent failed to rebut the retaliation claim, the record reflects the DHO failed to consider this defense, and retaliation is a violation of his constitutional rights.  Reply, ECF No. 27, at 1-2.

A claim of retaliation in a disciplinary proceeding is an attack on the charge itself and is a challenge to the sufficiency of the evidence.  *See Muldrow v. Chester, et al.*, No. 10-3160-RDR, 2010 WL 3946313, *3 (D. Kan. Oct. 5, 2010).  To state a valid claim for retaliation, "[m]ere allegations of constitutional retaliation will not suffice; [Applicant] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990).  Applicant also must "prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place."  *Smith v. Maschner*, 899 F.2d 940. 949-50 (Mar. 29, 1990).  Applicant fails to allege specific facts in support of his retaliation argument.  Given the finding of some evidence and the absence of any specific factual allegations, Applicant's vague and conclusory assertion that the reporting officer retaliated against him because he had reported the officer for assaulting him is not sufficient to demonstrate unconstitutional retaliation.

Applicant appears to suggest that his statement of retaliation requires an abandonment of the some evidence standard in *Hill*.  There is no authority suggesting such a requirement. *Longstreth v. Franklin*, 240 F. App'x 264, 268 (10th Cir. 2007).  Based on the review of the video by the investigating officer, some evidence existed that Applicant committed the offense at issue in this disciplinary action.  The video revealed that the reporting officer approached Applicant's cell, appeared to confiscate a fishing line that Applicant placed through the food slot, and then moved quickly to avoid being struck, kicked the food slot, and then pulled a baton but did not swing or strike the baton.  Under *Hill* a disciplinary board's decision is upheld even if the

7

evidence supporting the decision is meager.  The video review is sufficient to support the DHO's

decision and defeat Applicant's fabrication/retaliation claim.  This claim lacks merit and will be

dismissed.

2.  Mental Illness/28 C.F.R. §  541.6 Violation

Applicant asserts that at no time during the disciplinary process, despite his

schizophrenic diagnosis, did the BOP determine the effect of his mental illness on his

competence or legal culpability, as they are required to do pursuant to 28 C.F.R.

§ 541.6.  Application at 6.  Respondent argues that § 541.6 does not require a DHO to refer all

prisoners with mental health issues for a mental health evaluation.  Answer at 7.  Rather, § 541.6

indicates that a competency/sanity referral is justified if it appears that the inmate may be

incompetent or not responsible for his conduct.  *Id.*  Respondent further argues that Applicant's

schizophrenia does not trigger the required evaluation under § 541.6 because Applicant did not

appear incompetent or not responsible for his conduct, and a plain reading of the regulation

indicates that the term "mentally ill" relates to the state of being.  *Id.* at 8.  Finally, Respondent

argues that because Pinson appeared to be competent and responsible at the DHO hearing,

understood the nature of the proceedings, stated he did not commit the prohibited acts, requested

and obtained a staff representative, submitted a witness list and a written statement, helped in his

own defense, and did not claim mental illness impaired his ability to participate in the hearing,

his conclusory statement that he is a schizophrenic does not trigger § 541.6.  *Id.*  Respondent

further contends that twice in the recent past Applicant was found competent to stand trial in

criminal charges in federal court, was denied relief under 28 U.S.C. § 2255 based on a mentally

incompetent claim, and is not able to establish a constitutional violation based on the BOP's failure to follow 28 C.F.R.§ 541.6, an administrative regulation. *Id.* at 8-9.

In the Reply, Applicant asserts that Respondent misreads the regulation, because whether a prisoner is insane or incompetent is a determination that should be made by a mental health professional. Reply at 2. Applicant further asserts that it is without question that he is mentally ill and the Tenth Circuit noted his history of "severe psychiatric and other mental health problems" in *United States v. Pinson*, 542 F. 3d 822, 827 (10th Cir. 2008). *Id.* Applicant also asserts that the sentencing court asked that he be provided with four to eight years of structured therapy, but instead the BOP placed him in a maximum security prison where he has spent the last six years in solitary confinement. *Id.* at 2-3. Applicant further contends that the BOP was aware of his "sever" mental illness and yet not one word was mentioned in the DHO report even though he complained of hallucinations and difficulty concentrating. *Id.* at 3. Finally, Applicant contends that, as a result of this lawsuit and other pending cases, the BOP for the first time examined him in a disciplinary action and deemed he was "not responsible." *Id.*

Applicant does not deny that he provided a written statement for consideration in this disciplinary proceeding or claim that the statement was misrepresented in the DHO report. As presented in the DHO report, Applicant asserted in his statement that (1) the charges were fabricated in retaliation for his reporting a staff member; (2) the video did not show Applicant throwing anything or blocking a food slot; and (3) describes the reporting staff member's movements at the time of the incident. Answer, ECF No. 22-1, Attach. 2 at 12. In the Reply, Applicant describes with great detail the events that led up to the incident, the number of witnesses he requested and why, and the comments  the DHO made to him during the hearing.

Reply at 11. Applicant's ability to recall the events, both during the incident and at the second disciplinary proceeding belie his claims that he was not responsible for his actions or that he was unable to participate in the second disciplinary proceeding.

The Court also takes notice of two evaluations that Applicant included with a filing in *Pinson v. Davis*, No. 11-cv-00608-WYD, ECF No. 23 (D. Colo. Filed Mar. 10, 2011). The evaluations were prepared by prison staff at the time Applicant was placed in a special housing unit on two occasions, one time at Houston FDC, June 12, 2008, and the other at Talladega FCI on September 8, 2010. ECF No. 23 at 16-17. The second evaluation was conducted about a month prior to when the incident at issue in this action occurred. The September 8 evaluation noted "significant mental health and/or behavioral problems." *Id.* at 17. This evaluation may support a finding for Applicant's potential to harm others, but the evaluation does not support a finding, such as Applicant seeks to demonstrate, that based on his mental health history, and diagnosis, he is not responsible for his actions or is not competent enough to participate in a disciplinary proceeding.

The Court also takes notice of an exhibit the BOP submitted with an answer to Applicant's prisoner complaint filed in the United States District Court for the District of Northern Alabama, *see Pinson v. Reese*, No. 09-cv-02379-CLS-HGD, ECF No. 18-29 (N.D. Ala. Filed Nov. 24, 2009). This exhibit is a Declaration by Dr. William Holbrook, who in February 2010 was the clinical director at Talladega, Alabama, when Applicant was housed at the prison facility in Talladega. Dr. Hollbrook attests that Applicant has a history of Schizophrenia, but part of the problem of keeping Applicant's medical condition stable is that he is noncompliant with his medications, (refused or faked taking medications on at least forty-five separate

occasions) even though he is continually counseled on the importance of taking all of his medications as prescribed. *Id.* at ECF No. 18-29.  Again, nothing in Dr. Hollbrook's declaration supports a finding that, based on Applicant's diagnosed mental illness, he was not responsible for his acts in the infraction on October 9, 2010, or incompetent and not able to participate in the December 15, 2011, disciplinary proceeding.

Furthermore, the Court finds that on October 8, 2010, two days prior to when the incident at issue in this case occurred, Applicant was able to sign and submit a well-reasoned 28 U.S.C. § 2255 motion in his criminal case in the United States District Court for the Southern District of Texas. *See United States v. Pinson*, No. 08-cr-00283, ECF No. 52  (S.D. Tex. Dec. 9, 2008). Nothing Applicant stated in the § 2255 motion indicates that his mental state was such at that time that he could not be responsible for his actions.  Applicant further filed a motion for preliminary injunction in *Pinson v. Lappin, et al.*, No. 10-cv-02456-ZLW, ECF No. 3 (D. Colo. Jan. 12, 2011), that is dated and signed October 16, 2010, six days after the incident at issue in this case occurred.  The motion is detailed and like the § 2255 motion well-reasoned.  Applicant states in the motion that his mental condition has deteriorated while he has been in isolation and as a result he is anxious, withdrawn, hypersensitive, irritable, aggressive, paranoid, suicidal, has cognitive dysfunction, loss of control, and rage, and is subject to emotional breakdown, but he does not refer to the October 10 incident as an example of his mental condition.  *Id.* at 8. Nothing Applicant asserts in the motion for preliminary injunction indicates that he should not be held responsible for his actions in the October 10, 2010 infraction, nor does he state that due to his mental state he is unable to control his behavior and should not be held responsible for any act he commits.

Applicant's second hearing in IR No. 2076801 took place on December 15, 2011.  On December 20, 2011, Applicant signed and dated an eight-page motion for reconsideration that he filed in *Pinson v. Prieto, et al.*, No. 10-cv-00811-PSG-SP (C.D. Cali. Filed June 2, 2010).  *See id.* at ECF No. 93.  The filing again is well-reasoned, like the filings identified above, detailed, and is not a document that Applicant could have prepared in one day for filing.  Applicant's writing is focused.  He mentions nothing about his mental health issues, and more than adequately presents his argument regarding why he should be considered for placement in a witness protection program.

The Court further notes that during the time from October 10, 2010, when the incident occurred, until December 15, 2011, when the second hearing occurred, Applicant filed, or had pending throughout that time, at least twenty-eight lawsuits in various federal courts.  A review of these cases on PACER (Public Access to Court Electronic Records) indicates that Applicant was able to maintain these cases sufficiently.  Applicant filed a 28 U.S.C. § 1915 motion in *Pinson v. Davis*, No. 11-cv-02955-WYD (D. Colo. Aug. 8, 2012), on December 16, 2011, that is signed and dated on December 8, 2011, and includes a certified account statement, about which Applicant provides specific rationale comments concerning his account statement, *id.* at ECF No. 3.  Applicant also filed a § 1915 motion in *Pinson v. Gulotta-Powers,* No. 11-cv-62289-KMW (S.D. Fla. Feb. 22, 2012), on December 21, 2011, that is dated and signed December 12, 2011, *see id.* at ECF No. 16.  In *Pinson v. Davis*, No. 11-cv-03346-WYD (D. Colo. Apr. 16, 2012), Applicant filed a 28 U.S.C. § 2241 action on December 21, 2011, ECF No. 1, that is signed and dated December 11, 2011, that also is rationale, complete, and sufficiently pled, and merited a response from Respondent regarding exhaustion.

Finally, the Court finds no merit to Applicant's claim that not until after he commenced this lawsuit, and other actions regarding the need for a mental evaluation by BOP, was a mental evaluation conducted in conjunction with one of his disciplinary proceedings.  In a DHO report submitted as evidence in *Pinson v. Davis*, No. 11-cv-01334-WYD (D. Colo. Apr. 25, 2012), a mental evaluation was conducted by Psychologist J. Zonno as part of the disciplinary proceeding that took place in Incident Report No. 1655656.  In the DHO report, it is noted Psychologist J. Zonno provided a memorandum, dated October 19, 2007, that stated Applicant was responsible for his actions at the time of the incident and he was competent to participate in the discipline process.  *Id.*, ECF No. 25-20 at 2.  Applicant did not deny the psychologist's findings in Case No. 11-01334-WYD.

This Court is not addressing in this action the credibility of Applicant's allegations regarding his mental health issues. The Court addresses only whether Applicant was denied due process in the incident report at issue because a mental health expert was not requested to determine if he was not responsible for his actions and/or was incompetent to proceed with the disciplinary proceedings.   As stated above, Applicant was able to describe the incident with sufficient detail in his statement for the DHO hearing and to effectively participate, as described in his Reply, in the disciplinary proceeding.  He was able to litigate in at least twenty-nine cases in several federal district courts from October 8, 2010, through December 20, 2011, and file well-reasoned pleadings in at least three of the twenty-nine cases immediately prior and subsequent to the incident and prior to the December 15 hearing.  Even if Applicant had some difficulties at the time of the hearing, based on the above findings, he was able to adequately proceed with the disciplinary proceeding.  Therefore, to the extent that a determination for the

need of a mental evaluation, as prescribed in § 542.6, would be considered a minimum due process requirement, the DHO's failure to request the evaluation was harmless in this disciplinary proceeding, based on the above findings.

Furthermore, a failure to comply with § 542.6, alone, does not state a violation of Applicant's due process rights.  In *Hovater v. Robinson,* 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (citing *Davis v. Scherer,* 468 U.S. 183, 194 (1984)), the Tenth Circuit stated that "a failure to adhere to administrative regulations does not equate to a constitutional violation."  Nonetheless, the DHO who presided over the December 15, 2011 hearing attested that during the disciplinary proceeding Applicant was able to understand the nature of the proceeding because he stated he did not commit the prohibited act, consulted with his staff representative, submitted a witness list, and provided a written statement.  Decl. Jeffrey George, ECF No. 22-1, at 4.  Section 541.6, effective June 20, 2011, states as follows:

> If it appears you are mentally ill at any stage of the discipline process, you will be examined by mental health staff.
>
> (a) Competency to Participate in Disciplinary Proceedings. If evidence indicates that you cannot understand the nature of the disciplinary proceedings, or cannot help in your own defense, disciplinary proceedings may be postponed until you are competent to participate. The Unit Disciplinary Committee or Discipline Hearing Officer will make this decision based on evidence, including evidence presented by mental health staff.
>
> (b) Responsibility for Conduct. You will not be disciplined for conduct committed when, as the result of a severe mental disease or defect, you were unable to appreciate the nature and quality, or wrongfulness of the act. The UDC or DHO will make this decision based on evidence, including evidence presented by mental health staff.

Based on the George Declaration and Applicant's own description of both the incident and the events of the second disciplinary proceeding, the DHO complied with § 541.6.   Applicant's

mental illness claim, therefore, will be dismissed

3.  Denial of Witnesses/Violation 28 C.F.R. 541.8(f)(2)

Applicant asserts that only two of the many witnesses he requested were allowed at the

DHO hearing, violating 28 C.F.R. 541.8(f)(2).  Application at 6.  Applicant further asserts that

the DHO did not document in the report the reasons for denying the requested witnesses, and

these witnesses would have testified that Applicant did not assault or threaten anyone.  *Id.*

Applicant also asserts that the DHO decided Applicant's five eyewitnesses were not credible

because they are inmates, which is indicative of bias and partiality.  *Id.*

Respondent asserts that (1) the DHO did not abuse his discretion in calling only two of

the fourteen witnesses Applicant requested because the testimony of the excluded witnesses is

cumulative; and (2) the DHO did state in the report that he only called two of the witnesses

because testimony from all fourteen witnesses would be repetitive, even though he is not

required to state the reason for denying a witness.  Answer at 9-11.

In his Reply, Applicant claims the DHO knew the excluded witnesses would have

"presented different testimony on separate issues," especially that Lieutenant McKnight stated he

would " 'get Pinson back' by writing false charges.' "  Reply at 5 and11.  Applicant also asserts

that the DHO stated all inmates are liars and he would not listen to "two hours of bullshit."  *Id.* at

5.  Applicant further asserts that the chief of internal affairs was an important witness because he

had overseen other investigations where Lieutenant McKnight had lied, *id.* at 11, and that

Respondent does not address why the DHO failed to state in the report the basis for his decision

not to call the chief of internal affairs to testify or provide a written statement, *id.* at 5.

"Prisoners have only a qualified right to call witnesses, and prison officials may evaluate a request for witnesses and refuse to provide them for various reasons." *See Freeman v. Carroll*, 506 F. App'x 694, 706 (10th Cir. 2012) (citing *Wolff*, 418 U.S. at 566). "The scope of a prisoner's right to call and confront witnesses is committed to the sound discretion of prison officials." *Ramer v. Kerby*, 936 F.2d 1102, 1104 (10th Cir. 1991). "The prisoner's request [for a witness] should also be denied if officials affirmatively determine the . . . testimony would be irrelevant, cumulative, or otherwise unnecessary for the committee to come to a fair resolution of the matter." *Id.* "Prison officials are not required to make a written record of the reasons for granting or denying a prisoner's request to call or confront a particular witness." *Id.* (citing *Wolff*, 418 U.S. at 566). "[E]rrors made by prison officials in denying witness testimony at official hearings are subject to harmless error review." *Howard*, 487 F.3d at 813 (quotation omitted). Moreover, an inmate cannot maintain a due process claim for failure to permit witness testimony or documentary evidence unless he shows that the testimony " 'would have affected the outcome of his case.' " *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (quoting *Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir. 1993)).

As stated above, review under the some evidence standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Howard*, 487 F.3d at 812 (quoting *Hill*, 424 U.S. at 455). "A disciplinary board's decision can be upheld . . . even if the evidence supporting the decision is meager." *Id.* The DHO relied on McKnight's statement and the investigating officer's video tape of the incident. The DHO found the reporting officer's version of the incident to be more credible than the witnesses' statements and Applicant's statement. The investigating officer's review of and

16

statement about the video alone met the some evidence required to find Applicant committed the offense. Even if the DHO was remiss in not allowing all of Applicant's witnesses, especially requesting the chief of internal affairs to testify or provide a statement, the failure to do so was harmless error because some evidence existed to support the DHO's findings and Applicant failed to show how the additional witness testimony would have affected the outcome of this disciplinary proceeding. Applicant's claim that the chief would state Lieutenant McKnight had a history of writing false reports on inmates is highly speculative, and any statement the chief would make is not subject to cross-examination by Applicant, *see Wolff*, 418 U.S. at 568. Applicant's witness claim, therefore, does not state a violation of his due process rights and the claim will be dismissed.

Applicant also fails to state a violation of § 541.8(f)(2). Paragraph (3) of § 541.8(f) allows the DHO discretion in determining whether a witness should be called if the testimony would be repetitive. The DHO allowed only two inmate witnesses because all the inmates would testify to the same issues. Declaration at 12. The DHO acted within § 541.8. Nonetheless, even if the DHO did not comply with § 542.8 that failure alone does not state a due process rights violation. *Hovater,* 1 F.3d at 1068 n. 4.

4. Failure to Interview Inmate Piphus

Applicant contends that the investigating officer refused to interview inmate Piphus because the officer claimed this inmate's cell was not within view of Applicant's cell. Application at 6. Respondent asserts that the inmate was interviewed and that only a note was made in the DHO report that Piphus's cell was not in view of Applicant's cell. Answer at 11. Even if Applicant is correct about the location of Piphus's cell, the note in the report is no more

than harmless error.  Piphus's statement was included in the DHO report for consideration and

some evidence was found to support the finding that Applicant committed the offenses.

Applicant also, in his Reply, does not deny that Piphus provided a statement that was considered

by the DHO.  This claim, therefore, will be dismissed for lack of merit.

5. Staff Representative

Applicant asserts that his staff representative refused to obtain records from the office of

internal affairs that pertained to the investigation of this incident, which would have

corroborated Applicant's retaliation claim and challenged the reporting officer's credibility.

Application at 6.  In his Reply, he further contends that the DHO would not allow the staff

representative time to acquire the OIA investigation records proving the report was false.  Reply

at 6.

A prisoner does not have a general constitutional right to have a staff representative assist

him during the disciplinary process.  *Wolff,* 418 U.S. at 570; *see also  Maschner,* 899 F.2d at 946

(prisoner was not constitutionally entitled to counsel at prison disciplinary hearing); *Duarte v.*

*Turner,* No. 93–2427, 1995 WL 57187, *3 (7th Cir. Feb.10, 1995) (unpublished decision)

(rejecting habeas claim that staff representative was ineffective for failing to discover evidence).

Rather, due process requires the aid of a staff representative only "[w]here an illiterate inmate is

involved" or "the complexity of the issue makes it unlikely that the inmate will be able to collect

and present the evidence necessary for an adequate comprehension of the case."  *Wolff,* 418 U.S.

at 570.  Because the issues are not complex and he is literate, Applicant has no constitutional

right to the assistance of another during the disciplinary process.

*See id.*

Even if (1) Applicant is entitled to assistance by a staff representative for a disciplinary hearing: (2) the representative was required in his capacity to obtain the records; and (3) the DHO was remiss in not allowing the staff representative time to obtain the internal affairs report, Applicant fails to show how obtaining the documentary evidence from internal affairs would have affected the outcome of his case. *Grossman*, 447 F.3d at 805. Applicant's claim that the internal affairs report would corroborate his retaliation claim and challenge the reporting's officer's credibility is conclusory, vague, and self-serving. Nothing Applicant asserts explains what evidence the report would provide. Also, as stated above, some evidence existed to support the DHO's finding. Applicant, therefore does not asset a violation of his due process rights, and this claim will be dismissed for lack of merit.

6. Video

Applicant contends that the DHO refused to review the video, which showed that Applicant did not strike the officer. Application at 6. Respondent asserts that the DHO did consider the video when he reviewed Lieutenant Brown's testimony regarding the content of the video. Answer at 12-13. In his Reply, Applicant appears to argue that because a material dispute existed regarding what the video shows, under *Howard* the DHO was required to view the video. Reply at 6-7. Applicant's reliance on *Howard* is misplaced. In *Howard*, the videotape was not produced, and the BOP claimed the tape was cumulative. *Howard*, 487 F.3d at 814. In Applicant's disciplinary proceeding, the videotape was produced, the investigating officer reviewed the tape, and he provided a statement regarding the details of what he saw for consideration by the DHO. Applicant, therefore is challenging the credibility of the investigating officer's testimony and the assessment by the DHO of the testimony. As stated

above, the review under the some evidence standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.*, at 812. Some evidence existed to find Applicant committed the disciplinary infractions. The DHO's failure to view the video did not violate Applicant's due process rights. This claim, therefore, will be dismissed.

7. Sanctions Imposed Twice

Applicant contends the DHO reimposed the same sanctions at the second hearing causing him to serve the sanctions a second time. Application at 6. Jeffrey George attests in his Declaration, attached to Respondent's Answer, that he reviewed Applicant's Chronological Record, which lists the sanctions Applicant received as a result of the disciplinary proceeding in IR. No. 2076801. Declaration at 5. The record lists the sanctions only once indicating Applicant served the sanctions only one time. *Id.* Applicant does not disagree with Mr. George's statement. The Court will dismiss this claim for lack of merit.

8. Delay of Six Months on Written Report

Applicant asserts that the DHO improperly waited six months to write his report. Application at 6. Respondent asserts that Applicant cites to no due process or other requirement that the DHO report be written within six months. Answer at 14. Nor does Applicant claim any prejudice. *Id.* Applicant does not disagree with Respondent's argument. The Court finding no alleged claim of prejudice will dismiss this claim for lack of merit.

### III. CONCLUSION

Based on the above findings, Applicant's claims lack merit and must be dismissed.

## IV.  ORDERS

Accordingly, it

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 1, is DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that  leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED this 13th day of March, 2014.

BY THE COURT:

_____

RAYMOND P. MOORE
United States District Judge